IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Edward W. Nottingham**

Civil Action No. 07–cv–00223–EWN

MOHAMMED KEDIR AMAN,

    Plaintiff,

v.

ALBERTO R. GONZALES, Attorney General of the United States,
ROBERT MUELLER III, Director of the Federal Bureau of Investigation,
MICHAEL CHERTOFF, Secretary of the Department of Homeland Security,
EMILIO GONZALEZ, Director, United States Citizenship and Immigration Services,
MARY MISCHKE, Acting Denver District Director of the United States Citizenship
and Immigration Services,

    Defendants.

## ORDER AND MEMORANDUM OF DECISION

This is an immigration case. Plaintiff Mohammed Kedir Aman seeks a determination on his longstanding application for naturalization. This matter is before the court on Defendants' "Motion for Remand, or in the Alternative, for a Stay or Dismissal," filed April 6, 2007. This court has jurisdiction pursuant to 8 U.S.C. § 1447(b).

## FACTS

*1. Factual Background*

*a. Plaintiff's Application*

Plaintiff is originally from Ethiopia. (Pet. for *De Novo* Hearing on Naturalization Appl., and Compl. for Injunctive, Decl., and Mandamus Relief ¶ 2 [filed Jan. 30, 2007] [hereinafter "Compl."].) Plaintiff was granted refugee status and became a lawful permanent resident on May 18, 1999. (*Id.*) On April 21, 2004, Plaintiff filed a form N-400 "Application for Naturalization." (*Id.* ¶ 3.) Plaintiff represents that he meets all of the eligibility requirements for naturalization. (*Id.* ¶ 4.)

On September 14, 2004, Plaintiff attended an interview in connection with his application in the Denver, Colorado offices of the United States Customs and Immigration Services ("USCIS"). (*Id.* ¶ 3.) Plaintiff represents that at the interview, he was told his application could not be given final approval until Defendants completed a "name check." (*Id.* ¶ 5.) As of the filing date of the motion presently before this court, Plaintiff's name check had yet to be completed. (Mot. for Remand, or in the Alternative, for Stay or Dismissal, Ex. D ¶ 22 [Cannon Decl.] [filed Apr. 6, 2007] [hereinafter "Defs.' Br."].)

*b. The "Name Check" Process*

Applicants for naturalization are subject to various background checks to ensure they do not threaten public safety or national security. (*Id.*, Ex. A ¶ 2 [Lindauer Decl.].) The required checks include review by the National Name Check Program, which is administered by the Federal Bureau of Investigation ("FBI"). (*Id.*, Ex. A ¶ 2 [Lindauer Decl.], Ex. D ¶ 4 [Cannon

Decl.].) The FBI attributes program backlog to increased use after September 11, 2001. (*Id.*, Ex. D ¶¶ 17–20 [Cannon Decl.].)

The FBI received a name check request for Plaintiff from the USCIS on or about May 12, 2004. (*Id.*, Ex. D ¶ 22 [Cannon Decl.].) Historically, about seventy percent of name check requests submitted by the USCIS are completed electronically and returned as having "No Record" within less than one week. (*Id.*, Ex. D ¶ 13 [Cannon Decl.].) The remaining requests go through a manual name search typically completed within two months, the vast majority of which are returned to the USCIS as having "No Record." (*Id.*, Ex. D ¶ 14 [Cannon Decl.].) However, a small fragment of the manual name checks are identified for further review as possibly being connected to an FBI record. (*Id.*) If the implicated records are in the FBI's electronic database, review is quickly undertaken. (*Id.*) If not, paper records must be tracked down. (*Id.*)

Occasionally, this process can "legitimately take . . . several years." (*Id.*, Ex. B at 2–3 [USCIS Fact Sheet].) Defendants do not indicate why Plaintiff's name check request has been pending for more than three years.[1] (*See id.*)

---

[1] In a footnote, Defendants purport to rely on Mr. Cannon's declaration to assert that Plaintiff's file "is currently in a processing queue to be reviewed by an analyst who must retrieve and review" certain FBI records. (Defs.' Br. at 14 n.6 [citing Ex. D ¶¶ 14, 19, 20 (Cannon Decl.)].) Much to this court's chagrin, Mr. Cannon's declaration does not support this contention. (*See id.*, Ex. D ¶¶ 14, 19, 20 [Cannon Decl.].) The cited paragraphs merely speak of FBI processes in general terms. (*Id.*) Nowhere does the declaration state what steps, if any, have been taken with Plaintiff's application. (*See id.*, Ex. D ¶¶ 1–23 [Cannon Decl.].)

*2.*     *Procedural History*

On January 1, 2007, Plaintiff filed his complaint in this court, requesting, *inter alia*, that the court grant him citizenship or issue a writ of mandamus compelling USCIS action. (Compl.) On April 6, 2007, Defendants filed a motion to remand, stay, or dismiss this case: (1) asserting mandamus relief is improper because Plaintiff is not entitled to forego the required security clearances; (2) requesting that the FBI be dismissed because there is no legal authority requiring the FBI to complete Plaintiff's name check by a date certain; and (3) requesting, in the alternative, that the court hold the case in administrative abeyance pending completion of the FBI name check and finalization of the USCIS security check. (Defs.' Br.) On April 26, 2007, Plaintiff filed a response. (Pl.'s Resp. to Defs.' Mot. for Remand, or in the Alternative, for a Stay or Dismissal [filed Apr. 26, 2007] [hereinafter "Pl.'s Resp."].) This matter is fully briefed.

**ANALYSIS**

*1.*     *Legal Background*

The naturalization process begins when an applicant files a form N-400 with the USCIS. 8 U.S.C. § 1445(a); 8 C.F.R. § 334.2(a). The USCIS must then perform a background investigation that "shall consist, at a minimum, of a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application." *Id.* § 335.1.

Once the USCIS receives a "definitive response that a full criminal background check" has been completed, a USCIS officer must meet with the applicant for an "initial examination." *Id.* §

335.2. Sometimes, as in the instant case, the USCIS ignores this regulation and conducts the examination of an applicant before background checks have been completed.  (*See* Defs.' Br., Ex. A ¶¶ 7–8 [Lindauer Decl.]); *see also Shalabi v. Gonzales*, No. 4:06CV866 RWS, 2006 U.S. Dist. LEXIS 77096, at *3–4 (E.D. Mo. Oct. 23, 2006).

Such an approach creates certain problems for the USCIS, however, because the examination triggers a 120-day clock within which resolution of the application is advisable, although not required:

> If there is a failure to make a determination under [8 U.S.C. § 1446] before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter.  Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the [USCIS] to determine the matter.

8 U.S.C. § 1447(b); *see* 8 C.F.R. § 335.3 (providing that the officer conducting the initial examination may require a reexamination, which "shall be scheduled within the 120-day period after the initial examination").

Although some district courts have held that section 1447(b)'s 120-day period does not begin to run until completion of the FBI name check, "[t]he majority of district courts considering the jurisdictional issue have held that the [initial examination] interview date triggers the 120-day time period referenced in [section] 1447(b)." *Mahd v. Chertoff*, No. 06–cv–01023–WDM–PAC, 2007 U.S. Dist. LEXIS 20762, at *7 (D. Colo. Mar. 22, 2007) (Miller, J.); *see Mostovoi v. Sec'y of the Dep't of Homeland Sec.*, No. 06 Civ. 6388 (GEL), 2007 U.S. Dist. LEXIS 40646, at *7–8 (S.D.N.Y. June 4, 2007) (collecting eighteen district court cases rejecting the "strained" view that

120-day period does not begin to run until completion of the FBI name check). This court has previously determined that the majority rule is "the better-reasoned view." *Mahd*, 2007 U.S. Dist. LEXIS 20762, at *7.

### *2.   Evaluation*

Defendants do not challenge this court's jurisdiction to hear this case under section 1447(b). (*See* Def.'s Br.) In light of Judge Miller's well-reasoned opinion in *Mahd* and the great weight of authority supporting it, I find that this court has jurisdiction thereunder to entertain the case. *See Mahd*, 2007 U.S. Dist. LEXIS 20762, at *7; *see also Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) (stating federal courts have an independent duty to examine the question of jurisdiction). Thus, I turn to the parties' arguments.

### *a.   Is a Name Check Required?*

Plaintiff asserts that no statute or regulation requires an FBI name check. (Pl.'s Resp. at 3.) I disagree. The regulation concerning FBI background checks states:

> The [USCIS] will notify applicants for naturalization to appear before a [USCIS] officer for initial examination on the naturalization application only after the [USCIS] has received a definitive response from the [FBI] that a full criminal background check of an applicant has been completed. A definitive response that a full criminal background check on an applicant has been completed *includes*: (1) Confirmation from the [FBI] that an applicant does not have an administrative or a criminal record; (2) Confirmation from the [FBI] that an applicant has an administrative or criminal record; or (3) Confirmation from the [FBI] that two properly prepared fingerprint cards . . . have been determined unclassifiable for the purpose of conducting a criminal background check . . . .

8 C.F.R. § 335.2(b) (emphasis added). Section 335.2(b) "uses the term 'includes' to define the background check. Therefore, the conditions that follow the term are not exclusive. As a result,

the FBI's name check may be considered a part of the requirement for a 'full criminal background check.'" *Stepchuk v. Gonzales*, No. C06-570RSL, 2007 U.S. Dist. LEXIS 7796, at *4–5 (W.D. Wash. Jan. 18, 2007); *accord Hamzehzadeh v. Chertoff*, No. 4:06CV1462 RWS, 2007 U.S. Dist. LEXIS 40289, at *5 (E.D. Mo. June 4, 2007); *Shalabi*, 2006 U.S. Dist. LEXIS 77096, at *5–6. Plaintiff may not elude the name check requirement.

### *b.     Should the Court Issue a Writ of Mandamus?*

Defendants contend that there is no basis for the issuance of a writ of mandamus in this case. (Defs.' Br. at 9–10.) I agree.

A district court has original jurisdiction over a mandamus action "to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "Mandamus is an extraordinary remedial process . . . ." *Paniagua v. Moseley*, 451 F.2d 228, 229 (10th Cir. 1971). Thus, "[t]o be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v. Ziglar*, 398 F.3d 1201, 1206 (10th Cir. 2005).

Plaintiff fails to point to any clear right to relief or demonstrate that he has no other adequate remedy. (*See* Pl.'s Resp. at 8–9.) To the contrary, the clear avenue accorded to a person in Plaintiff's position is to petition the district court pursuant to section 1447(b). A court so petitioned then may either determine whether the application should be granted or remand the matter to the USCIS. *See* 28 U.S.C. § 1447(b). This court sees no reason why Plaintiff should

end-run section 1447(b)'s remedies in order to pursue the extraordinary remedy of mandamus. Accordingly, I find that Plaintiff is not entitled to issuance of a writ of mandamus.

### *c.     May the Court Determine the Matter, or Must it be Remanded?*

As noted above, section 1447(b) authorizes a federal district court to decide whether the applicant is entitled to naturalization or to remand the matter to the USCIS "with appropriate instructions." *Id.* In *Mahd*, Judge Miller was confronted with the same question as is presented here. 2007 U.S. Dist. LEXIS 20762, at *9. There, as here, the plaintiff's application had been languishing in the FBI's name check queue for more than two years after the USCIS had conducted the initial interview. *Id.* at *2. Judge Miller stated:

> Under the circumstances, I find that a remand to the agency is the appropriate course of action. A person may not be naturalized until the FBI's name check investigation is completed. *See* [28 U.S.C.] § 1446(a); 8 C.F.R. § 335.2(b). The federal courts are not equipped to complete background checks on naturalization applications or process and analyze the information once it is obtained. *See Khelifa [v. Chertoff]*, 433 F. Supp. 2d [836] at 842–43 [(E.D. Mich. 2006)]; *El-Daour [v. Chertoff]*, 417 F. Supp. 2d [679] at 683–84 [(W.D. Pa. 2005)]. Congress has placed initial decision-making authority on naturalization applications with USCIS because of the agency's expertise in that area.
>
> "Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." *INS v. Orlando Ventura*, 537 U.S. 12, 16 (2002). If [the] [p]laintiff is dissatisfied with the agency's decision, he can seek judicial review after exhausting his administrative remedies.

*Id.* at *9–10; *accord Shalabi*, 2006 U.S. Dist. LEXIS 77096, at *12 (stating "a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations"). Thus, Judge Miller remanded the case with instructions that: (1) the FBI complete the name check within forty-five days; (2) and the USCIS

decide on the plaintiff's application within forty-five days of receiving the FBI's results. *Mahd*, 2007 U.S. Dist. LEXIS 20762, at *11.

One factual difference distinguishes this case from *Mahd*. There, the USCIS had twice requested that the FBI expedite the plaintiff's name check. *Id.* at *10 n.5. Here, Defendants have made no representations concerning what efforts, if any, they have made to encourage expediency in the processing of Plaintiff's application. (*See* Defs.' Br.) While I recognize that the FBI's slowness is the chief cause of the substantial delay in this case, absent any representation by a USCIS official about any efforts to move this application along, Plaintiff is entitled to a reasonable presumption that the USCIS has done nothing. Consequently, I find that it is "appropriate" to instruct the USCIS to make its determination on Plaintiff's application within thirty days of receipt of the results from the FBI. *See* 28 U.S.C. § 1447(b).

### d.     *Does the Court Have Authority to Order FBI Action?*

Defendants contend that this court cannot "compel the FBI to speed up Plaintiff's name check, or to complete it by a particular deadline . . . where [there] is no statute or regulation which imposes a deadline for the FBI to complete a criminal background check." (Defs.' Br. at 14 [citation and internal quotation marks omitted].) I cannot ascribe to this view.

Plaintiff's initial examination took place on September 14, 2004. (*Id.*, Ex. A ¶ 7 [Lindauer Decl.].) Section 1447(b) gives this court the power to remand this case, "with appropriate instructions," if the USCIS does not make its final determination "before the end of the 120-day period after the date on which the examination [wa]s conducted." 28 U.S.C. § 1447(b); *Mahd*, 2007 U.S. Dist. LEXIS 20762, at *7.

Although section 1447(b) does not directly reference the FBI, it makes no sense to read the statute to state that the court cannot directly instruct the FBI to do what the court could indirectly require the FBI to do through "appropriate instructions" to the USCIS. Said differently, even if this court lacks the authority to instruct the FBI to complete Plaintiff's name check by a date certain, this court can still set a deadline by which the USCIS must finish processing Plaintiff's application. 28 U.S.C. § 1447(b). Whether the court instructs the FBI directly or instructs it indirectly through an order to the USCIS is a question of form, not substance. To hold otherwise would be to gut the court's discretion under section 1447(b). Thus, Defendants' jurisdictional arguments concerning the FBI are, in effect, moot.

This case has languished for over *three years*, and Defendants have offered no adequate explanation for the delay.[2] While I recognize that "[a] background check that is rushed and incomplete due to an artificial, court imposed deadline would not meet the statutory and regulatory requirements of a 'full criminal background check,'" *Shalabi*, 2006 U.S. Dist. LEXIS 77096, at *15, I find that, given the years the FBI has already had to work on Plaintiff's file, there is little danger of such a rushed determination here. Assuredly, the FBI already completed the

---

[2]The court has two observations. First, the FBI can credibly blame the backlog created in the aftermath of September 11 for only so long. (*See* Defs.' Br., Ex. D ¶¶ 17–20 [Cannon Decl.].) While federal courts must tread lightly when their actions implicate matters of foreign relations and national security, requiring the FBI to complete a refugee's background check in three years is not asking too much. Second, despite Defendants' suggestions to the contrary, I fail to see how the fact that Congress has set a sixty-day deadline by which the FBI must complete certain *security clearances for government employees* can be read to evince Congress's clear intent that the FBI never be subjected to deadlines with respect to background checks of prospective citizens. (*See id.* at 14–15.)

bulk of its work on the file during the past three years. Consequently, I find that it is "appropriate" for the FBI to complete the name check process within sixty days. *See* 28 U.S.C. § 1447(b).

### *3.     Conclusion*

Based on the foregoing it is therefore ORDERED:

1. DEFENDANTS' motion (#6) is GRANTED in part and DENIED in part.

2. Defendants' motion to remand this case to the USCIS is granted, with the following instructions: (1) the FBI shall complete Plaintiff's background security check and report the results to the USCIS within sixty days of the date of this order; and (2) the USCIS shall issue a decision on Plaintiff's pending naturalization application within thirty days of receipt of the results of the FBI security check.

3. Defendants' motion is otherwise denied.

Dated this 10th day of September, 2007.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
Chief United States District Judge